WARRANTECH V. STEADFAST

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-351-CV

WARRANTECH CORPORATION AND APPELLANTS

WARRANTECH CONSUMER PRODUCT 

SERVICES, INC.

V.

STEADFAST INSURANCE COMPANY APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

This is an insurance dispute involving a claims-made professional liability policy issued by Appellee Steadfast Insurance Company to Appellants Warrantech Corporation and Warrantech Consumer Product Services, Inc. (“Warrantech”).  Warrantech sued Steadfast for breach of contract and insurance code violations when Steadfast refused to defend Warrantech in another lawsuit (“the underlying claim”).  Steadfast filed a counterclaim for declaratory judgment, seeking a declaration that it had no duty to defend Warrantech.  The parties filed cross-motions for summary judgment.  The trial court denied Warrantech’s motion, granted Steadfast’s, and awarded attorney’s fees to Steadfast.  Warrantech appealed.  We modify the trial court’s judgment to delete the award of attorney’s fees to Steadfast, and we affirm the judgment as modified.

The Underlying Claim

Various reinsurers (“the Reinsurers”) alleged claims against Warrantech in the underlying suit for fraud and negligent misrepresentation arising out of Warrantech’s administration of consumer product warranties on behalf CompUSA, a national retailer of electronics goods.  The following paragraphs summarize the allegations made by the Reinsurers.  

Warrantech is in the business of administering extended service plans and consumer warranty programs on computers and other retail goods.  In 1995, Warrantech contracted with CompUSA to administer CompUSA’s warranty program.  To cover the cost of the warranty claims it was required to pay, Warrantech obtained insurance coverage from Houston General Insurance Company.  Under that insurance coverage, Warrantech submitted the warranty claims it paid to Houston General for reimbursement.  Houston General obtained reinsurance for the risk from the Reinsurers for claims paid in 1996 and 1997.  In essence, Houston General and the Reinsurers paid for warranty repairs made to CompUSA products and authorized by Warrantech.  The insuring agreements prohibited Warrantech from paying unsubstantiated warranty claims.

CompUSA’s warranty program was entirely paperless; warranty information existed only in its computer database.  The warranty database was incomplete and inaccurate.  Many of the electronic records of warranties CompUSA claimed to have sold did not identify the customer, the product, or they type of warranty sold.  Warrantech called these unidentifiable warranties “shell contracts.”

When a CompUSA customer called Warrantech with a warranty claim, it was frequently impossible for Warrantech to locate the caller’s CompUSA warranty.  Initially, Warrantech would not authorize a product repair unless the customer could provide proof-of-purchase documentation identifying the product and warranty purchased from CompUSA.  When the proof-of-purchase requirement proved burdensome, Warrantech began to authorize repairs on unvalidated or “non-val” warranty claims.  Warrantech would then attempt to manually match the repair invoice to a specific CompUSA warranty in the Warrantech database.  This process was time-consuming and labor-intensive. 

Warrantech began to link non-val warranty claims to the unidentifiable shell contracts.  In 1996, it developed computer software to automate the linking process and developed a second version of the software in 1997.  This automated linking process allowed Warrantech to pay non-val claims with insurance money. 

When the CompUSA warranty claims paid by Warrantech greatly exceeded what the Reinsurers expected to pay, the Reinsurers arranged to have Warrantech audited in 1998.  The audit did not discover the automated linking software, and Warrantech did not disclose its existence.  Nonetheless, as a result of the audit, Houston General accused Warrantech of significant overpayment of claims and demanded reimbursement from Warrantech for more than $19 million.  Likewise, the Reinsurers refused to reimburse Houston General for Warrantech claims. 

Houston General began an arbitration proceeding in June 2000 against the Reinsurers, seeking reimbursement for $46 million paid by Houston General to Warrantech for CompUSA warranty claims.  During the arbitration discovery process, Warrantech denied the existence of the automated linking software. But during the arbitration hearing in January 2002, the Reinsurers learned that the linking software existed, and Warrantech produced the first version of the software.  Soon thereafter, the Reinsurers learned that Warrantech had intentionally destroyed the second version of the linking software.  The arbitration panel awarded $39 million to Houston General in August 2002.   The Reinsurers sued Warrantech on September 19, 2002, for fraud and negligent misrepresentation, seeking to recover an unspecified sum for the unsubstantiated warranty claims paid by Warrantech.

The Insurance Policy

Steadfast issued a professional liability policy to Warrantech with a coverage period of July 30, 2002, to July 30, 2003.  The policy contains the following potentially relevant provisions:

I. COVERAGE

[Steadfast] will pay on behalf of the “Insured” all sums, in excess of the Deductible, which the “Insured” shall become liable to pay as “Damages” arising from each “Claim” made during the “Policy Period” . . . unless as of the inception date of this Policy any “Insured” knew or could reasonably foresee that such “Claim” would be made . . . during the “Policy Period.” 

II. DEFENSE AND SETTLEMENT; POLICY TERRITORY

. . . .

A. [Steadfast] shall defend any “Claim” against the “Insured” seeking “Damages” which are payable under the terms of this policy, even if such “Claim” is groundless, false or fraudulent. 

(comment: 1)
. . . .

VI.  DEFINITIONS

. . . .

B. “Claim” means any written demand received by the “Insured” for “Damages” or services, including but not limited to service of suit or other process, alleging a “Wrongful Act” by the “Insured”. 

. . . .

D. “Damages” means a monetary judgment or award the “Insured” is legally obligated to pay[.] 

. . . .

J. “Wrongful Act” means any:

1. actual or alleged error, omission,  neglect, misstatement or misleading statement;

2. breach of duty;

. . . .

unintentionally committed by any “insured”, or a person for whom the Named “insured” is legally liable, solely in the rendering of professional services. 

. . . .

Endorsement No. 1

AMENDMENT OF EXCLUSION A.

[This policy does not apply to any “Claim” based upon or arising out of:]

A. any dishonest, fraudulent or criminal act, error or omission or those of a knowing wrongful nature committed by or at the direction of the “Insured”.  The Company, however, shall provide a defense for such “claim” unless or until a judgment or final adjudication adverse to the “Insured” shall establish such behavior as an essential element of the cause of action so adjudicated. 

Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

Discussion

Duty to Defend

In its first issue, Warrantech argues that the trial court erred by ruling that Steadfast has no duty to defend Warrantech in the underlying suit.  Steadfast responds that, among other things, the “fortuity doctrine” precludes its duty to defend Warrantech for the underlying claim.

The Eight-Corners Rule

Under the eight-corners or complaint-allegation rule, an insurer’s duty to defend is determined by the third-party plaintiff’s pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.  
GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 
197 S.W.3d 305, 308 (Tex. 2006).  The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend:  the policy and the pleadings of the third-party claimant.  
Id.  
Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination, and allegations against the insured are liberally construed in favor of coverage.  
Id.  
A plaintiff’s factual allegations that potentially support a covered claim are all that is needed to invoke the insurer’s duty to defend, whereas the facts actually established in the underlying suit control the duty to indemnify.  
Id.
 at 310.  
A duty to defend any of the claims against an insured requires the insurer to defend the entire suit.  
CU Lloyds of Tex. v. Main Street Homes
,
 Inc.
, 79 S.W.3d 687, 692 (Tex. App.—Austin 2002, no pet.)
.

The Fortuity Doctrine

Insurance is designed to protect against unknown, fortuitous risks, and fortuity is a requirement of all policies of insurance.
  Burlington Ins. Co. v. Tex. Krishnas, Inc., 
143 S.W.3d 226, 230 (Tex. App.—Eastland 2004, no pet.); 
Scottsdale Ins. Co. v. Travis, 
68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied); 
Two Pesos, Inc. v. Gulf Ins. Co.
, 901 S.W.2d 495, 502 (Tex. App.—Houston [14th Dist.] 1995, no writ) (op. on reh’g).  An insured cannot insure against something that has already begun and which is known to have begun.  
Summers v. Harris
, 573 F.2d 869, 872 (5th Cir. 1998).  The fortuity doctrine precludes coverage for two categories of losses:  known losses and losses in progress.  
Tex. Krishnas, Inc.
, 143 S.W.3d at 230; 
Travis, 
68 S.W.3d at 75.  A “known loss” is one that the insured knew had occurred before the insured entered into the contract for insurance.
  Burch v. Commonwealth County Mut. Ins. Co.
, 450 S.W.2d 838, 840-41 (Tex. 1970); 
Tex. Krishnas, Inc.
, 143 S.W.3d at 230; 
Travis, 
68 S.W.3d at 75.  A “loss in progress” involves those situations in which the insured knows, or should know, of a loss that is ongoing at the time the policy is issued.  
Tex. Krishnas, Inc.
, 143 S.W.3d at 230;  
Travis, 
68 S.W.3d at 75; 
Two Pesos, Inc
., 901 S.W.2d at 502.  Application of the fortuity doctrine in the duty-to-defend context is resolved by the eight-corners rule; “we focus only on those facts that are alleged in the pleadings in the underlying lawsuit.”
  
Tex. Krishnas, Inc.
, 143 S.W.3d at 230.

Warrantech argues that “loss” in “known loss” or “loss in progress” means a judgment ultimately rendered against the insured.  Warrantech reasons that until rendition of judgment on the underlying claim, the loss is uncertain and cannot be “known.”  We reject this argument.  Warrantech  supports its argument with no cases applying Texas law, and the argument is fatally undermined by the many cases applying the fortuity doctrine under Texas law where the insured’s liability was not yet fixed by judgment.  
See
, 
e.g.
, 
Roman Catholic Diocese of Dallas ex rel. Grahmann v. Interstate Fire & Cas. Co.
, 133 S.W.3d 887, 889 (Tex. App.—Dallas 2004, pet. denied);  
Scottsdale
 
Ins. Co.
, 68 S.W.3d at 74.  Finally, at least one court applying Texas law has rejected the same argument made by Warrantech.  
See Franklin v. Fugro McClelland (Sw.), Inc.
, 16 F. Supp. 2d 732, 735 (S.D. Tex. 1997).

The Fortuity Doctrine Applies to Claims-Made Policies

Warrantech argues that the fortuity doctrine does not apply to a claims-made policy like the one at issue.  According to Warrantech, the very nature of a claims-made policy anticipates the possibility of losses occurring before the policy’s inception date, and to apply the fortuity doctrine to a claims-made policy would render the contract of insurance illusory because there would never be coverage for losses occurring before the inception date. 

We disagree.  First, fortuity is a requirement of 
all
 insurance policies.  
Two Pesos, Inc.
, 901 S.W.2d at 501.  Second, it is not the existence of a loss but the insured’s 
knowledge
 of the loss that triggers the fortuity doctrine.  As we have already observed, the fortuity doctrine precludes coverage for 
known
 losses and losses the insured 
knows, or should know
, are ongoing at the time the policy is issued.  
See
 
Tex. Krishnas, Inc.
, 143 S.W.3d at 230; 
Travis, 
68 S.W.3d at 75
.  Application of the fortuity doctrine to a claims-made policy will preclude coverage for losses of which the insured knows but will not preclude coverage for losses of which the insured is ignorant at the policy’s inception.  Thus, the fortuity doctrine does not render claims-made insurance illusory but merely restricts coverage to unknown losses.

Moreover, several courts have applied the fortuity doctrine to claims-made policies under Texas law.  
See Centennial Ins. Co. v. Bailey
, No. 05-98-00007-CV, 2000 WL 1515158, at *7, *10 (Tex. App.—Dallas Oct. 12, 2000, no pet.) (not designated for publication) (applying fortuity doctrine to pastoral professional liability claims-made policy); 
Precis, Inc. v. Fed. Ins. Co.
, No. 4:05-CV-411-A, 2005 WL 1639319, at *6 (N.D. Tex. July 12, 2005) (mem. op. & order) (applying Texas law and holding that known-loss rule precluded duty to defend under officers’ liability claims-made policy);
 Serv. Cas. Ins. Co. v. The Travelers Ins. Co.
, No. Civ.A.SA04CV251-XR, 2004 WL 2218381, at *6 (W.D. Tex. October 4, 2004) (order) (applying Texas law and holding fortuity doctrine precluded coverage for retaliatory-discharge claim when insured’s actions forming basis of claim occurred before inception of policy). 

Application of Fortuity Doctrine

Assuming for the sake of argument that Steadfast would otherwise owe Warrantech a duty to defend the underlying claim, we hold that the fortuity doctrine precludes that duty.  We review the facts alleged by the Reinsurers without regard to their truth or falsity.  
See GuideOne Elite Ins. Co.
, 197 S.W.3d at 308.  In 1996, Warrantech began haphazardly to match unvalidated warranty repair claims to shell warranty contracts in a deliberate attempt to turn unvalidated, uninsured claims into validated, insured claims.  Warrantech automated that process with the linking software in 1997.  Warrantech then denied the existence of the linking software during the arbitration proceeding and deliberately destroyed the second version of the software.  As a result of a 1998 audit, Houston General accused Warrantech of overpaying claims and demanded reimbursement of $19 million, and the Reinsurers refused to reimburse Houston General for Warrantech claims.  Warrantech was aware of and involved in the arbitration between Houston General and the Reinsurers over disputed Warrantech claims.  All of this happened before the policy’s inception date of July 30, 2002.  The only significant event to occur after the policy’s inception date was the arbitration panel’s $39 million award to Houston General in August 2002.

The Reinsurers’ petition compels one conclusion:  Warrantech knew of the loss caused by its mispayment of warranty claims long before the inception date of Steadfast’s policy.  This is true regardless of whether Warrantech made the mispayments intentionally or merely negligently as alternatively alleged by the Reinsurers in the underlying suit.  As of July 30, 2002, the policy’s inception date, the only unknown was whether Houston General or the Reinsurers would bear the brunt of the loss upon resolution of the arbitration proceeding.

Warrantech argues that Endorsement No. 1 precludes application of the fortuity doctrine.  Endorsement No. 1 excludes any claim arising from 

any dishonest, fraudulent or criminal act . . . or those of a knowing wrongful nature committed by or at the direction of the ‘Insured.’ [Steadfast], however, shall provide a defense for such ‘claim’ unless or until a judgment . . . adverse to the ‘Insured’ shall establish such behavior occurred as an essential element of the cause of action[.]

Again, we disagree with Warrantech’s analysis.  Implicit in a dishonest, fraudulent, or criminal act is knowledge that the act is wrongful.  Application of the fortuity doctrine does not hinge on whether the insured knew a particular act was wrongful.  Rather, it hinges on whether the insured knew before the inception of coverage that an act—knowingly wrongful or otherwise—resulted in a loss.  Therefore, Endorsement No. 1 is simply irrelevant to the fortuity analysis.  The question is not whether Warrantech caused the loss knowingly, but whether it knew of the loss before the policy’s inception.

Applying the fortuity doctrine under the constraints of the eight-corners rule, we hold that Steadfast has no duty to defend Warrantech against the Reinsurers’ claims.

“Coverage”

Steadfast’s trial court pleading and summary judgment motion sought two declarations:  that its policy provided no “coverage” for the Reinsurers’ claims and that it had no duty to defend Warrantech.  The trial court’s final judgment granted Steadfast’s summary judgment motion in all respects.  Steadfast never explained what it meant by “coverage.”  Having determined that Steadfast is entitled to summary judgment on the duty to defend, we must now determine whether it is entitled to summary judgment on “coverage.”

To answer that question, we must first determine what “coverage” means.  Steadfast’s policy, like all Texas liability policies, imposed two distinct duties:  the duty to defend and the duty to indemnify.  
See
 
Farmers Tex. County Mut. Ins. Co. v. Griffin
, 955 S.W.2d 81, 82 (Tex. 1997);
 Trinity Universal Ins. Co. v. Cowan
, 945 S.W.2d 819, 821-22 (Tex. 1997).  Thus, “coverage” can mean one of three things:  the duty to defend, the duty to indemnify, or both.  The insuring agreement in Steadfast’s policy is divided into two sections:  “I. Coverage” and “II. Defense and Settlement.”  The indemnity agreement appears under the “coverage” section, and the defense agreement appears under the “defense and settlement” section.  Thus, under Steadfast’s policy, “coverage” means “indemnity” or “duty to indemnify,” even though the words “indemnity” and “indemnify” do not appear in the 
policy.

The next question is whether Steadfast sought a declaration on the duty to indemnify.
(footnote: 1)  The words “indemnity” or “indemnify” appear nowhere in Steadfast’s trial court pleadings, its motion for summary judgment, its brief in this court, or the trial court’s judgment.
  Instead, Steadfast pleaded vaguely for a declaration on “coverage.”  Because “coverage” means “indemnity” under Steadfast’s policy, Steadfast’s pleading and summary judgment motion regarding “coverage” arguably sought a declaration on the duty to indemnify.

But Steadfast admitted in the trial court that it did 
not
 seek a declaration on indemnity.  After the trial court granted summary judgment, a question arose as to Steadfast’s right to attorney’s fees under the Declaratory Judgment Act—a question we will answer later in this opinion.  In connection with that dispute, Steadfast filed a motion containing the following statements:

“[T]he issue of indemnity had never specifically been raised by either party in this case[.]” 

“How, then, can Steadfast’s argument for attorneys’ fees be based on its contention that its counterclaim included a duty to indemnify when Steadfast admittedly 
did not move for summary judgment on that issue?
” [Emphasis in original.] 

“
[T]he duty to indemnify was never before the Court.” 
[Emphasis in original.] 

From these statements, it is clear that Steadfast did not seek a declaration on the duty to indemnify.

“Coverage” under Steadfast’s policy means the duty to indemnify.  But Steadfast admitted that it did not seek a declaration or summary judgment on its duty to indemnify.  We therefore hold that the trial court erred by granting summary judgment on “coverage.”  We overrule Warrantech’s first issue in part and sustain it in part.

C. Article 21.55 Claim

In its second issue, Warrantech argues that the trial court erred by denying its motion for summary judgment and granting Steadfast’s motion on Warrantech’s insurance code article 21.55 claim.  Article 21.55, section 6 penalizes an insurer that wrongfully refuses to pay a claim.  
Tex. Ins. Code Ann. 
art. 21.55,  § 6 (Vernon 2004).  Warrantech argues that Steadfast’s refusal to defend it in the underlying suit triggers the article 21.55, section 6 penalties.  Because we have already determined that Steadfast owes Warrantech no defense in the underlying suit, we also hold that the trial court did not err by granting Steadfast’s motion for summary judgment with regard to Warrantech’s article 21.55 claim and by denying Warrantech’s motion.  We overrule Warrantech’s second issue.

D. Attorney’s Fees

In its third issue, Warrantech argues that the trial court erred by awarding attorney’s fees to Steadfast under the Declaratory Judgment Act.  We agree.

The Declaratory Judgment Act provides that “[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney’s fees as are equitable and just.”  
Tex. Civ. Prac. & Rem. Code Ann.
 § 37.009 (Vernon 2005).  A party bringing a counterclaim under the Declaratory Judgment Act may recover its attorney’s fees “if its counterclaim is more than a mere denial of the plaintiff’s cause of action.”
  HECI Exploration Co. v. Clajon  Gas Co.
, 843 S.W.2d 622, 638 (Tex. App.— Austin 1992, writ denied).  The award or denial of attorney’s fees is within the sound discretion of the trial court.  
Oake v. Collin County
, 692 S.W.2d 454, 455 (Tex. 1985); 
Redwine v. AAA Life Ins. Co., 
852 S.W.2d 10, 17 (Tex. App.—Dallas 1993, no writ).

The Declaratory Judgment Act is not available, however, to settle disputes already pending before a court.
  Redwine, 
852 S.W.2d at 17
 
(citing 
John Chezik Buick Co. v. Friendly Chevrolet Co.
, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied)).  For example, a counterclaim brought under the Declaratory Judgment Act presenting no new controversies but brought solely to pave an avenue to attorney’s fees is improper.  
Id. 

Steadfast argues that its counterclaim is more than a mere denial of Warrantech’s claim because it sought a “determination regarding coverage under the Policy[.]”  As we have already determined, “coverage” under Steadfast’s policy means the duty to indemnify.  Yet Steadfast explicitly denied that it sought a declaration on the duty to indemnify.

The two duties arising from the policy are the duty to defend and the duty to indemnify, and Steadfast did not seek a declaration on the duty to indemnify.  Therefore, Steadfast sought only a declaration that it had no duty to defend Warrantech, which was a mere denial of Warrantech’s claim for breach of the duty to defend.  Thus, we hold that the trial court erred by awarding attorney’s fees to Steadfast under the Declaratory Judgment Act.  We sustain Warrantech’s third issue.

VI. Conclusion

We overrule Warrantech’s first issue in part and sustain it in part, overrule its second issue, and sustain its third issue.  We do not reach Warrantech’s remaining issues, in which it argues that it is entitled to recover its attorney’s fees and statutory penalties.  
See 
Tex. R. App. P.
 47.1.
  We modify the trial court’s judgment to exclude judgment with regard to “coverage” and omit the award of attorney’s fees to Steadfast, and we affirm the judgment as modified. 
See 
Tex. R. App. P.
 43.2(b). 

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: November 30, 2006

FOOTNOTES
1:
The duty to indemnify is justiciable before the insured’s liability is determined in the liability lawsuit when the insurer has no duty to defend, and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.  
Farmers Tex. County Mut. Ins. Co.
, 955 S.W.2d at 82-83; 
Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 
No. 14-05-00487-CV, 2006 WL 1892669, at *13-14 (Tex. App.—Houston [14th Dist.] July 6, 2006, no pet.).

COMMENTS AND ANNOTATIONS
Comment 1:
The “defense” coverage incorporates the “indemnify” coverage; no duty to defend if no duty to pay.