

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00409-CV

BARBARA LOUISE MORTON D/B/A                    APPELLANT
TIMARRON COLLEGE PREP

V.

TIMARRON OWNERS                                      APPELLEE
ASSOCIATION, INC.

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellee Timarron Owners Association, Inc. nonsuited all of its claims against Appellant Barbara Louise Morton d/b/a Timarron College Prep. The trial court signed an order, dismissing Timarron's claims against Morton and Morton's

---

[1]*See* Tex. R. App. P. 47.4.

counterclaim and claim for attorney's fees. Morton perfected this appeal from the trial court's dismissal order and argues in two issues that the trial court abused its discretion by dismissing her counterclaim that asserted a declaratory judgment action and sought attorney's fees. Because we are constrained to hold that, under the facts presented here, neither Morton's declaratory judgment counterclaim nor her claim for attorney's fees constituted a claim for affirmative relief, we will affirm.

## II. PROCEDURAL BACKGROUND[2]

Timarron sued Morton in state court, alleging causes of action for trademark infringement, unjust enrichment, tortious interference with prospective business relations, and unfair competition.[3] Morton answered, raising several counterclaims, including a declaratory judgment action, and pleading for attorney's fees under chapter 37 of the Texas Civil Practice and Remedies Code. In due course, Morton filed a combined no-evidence and traditional motion for summary judgment on all of Timarron's claims. Morton's summary judgment indicated that she waived all of her counterclaims except her declaratory judgment counterclaim seeking a declaration that "Defendant [Morton] is not infringing Plaintiff's [Timarron's] registered mark" and her claim for attorney's fees

---

[2]Because this case pivots on procedural issues, we omit a recitation of the underlying factual background.

[3]The parties also had proceedings pending concurrently in the United States Patent and Trademark Office (USPTO), but upon Timarron's motion, those proceedings were suspended pending resolution of the state court suit.

under chapter 37. Timarron responded by amending its petition[4] and two days later filed a notice of nonsuit and dismissal without prejudice as to its entire lawsuit. Although Morton filed an objection to Timarron's notice of nonsuit, the trial court signed an order of dismissal. The order of dismissal recited that Timarron, by and through its nonsuit, had dismissed all of its claims against Morton; that Morton had waived all of her causes of action except her declaratory judgment counterclaim on which she had sought summary judgment; and that neither party had any outstanding requests for affirmative relief. Morton then perfected this appeal.

### III. TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING MORTON'S DECLARATORY JUDGMENT COUNTERCLAIM

In her first issue, Morton argues that the trial court abused its discretion by dismissing her counterclaim following Timarron's nonsuit because, essentially, her declaratory judgment counterclaim constituted a claim for affirmative relief that survived Timarron's nonsuit.

---

[4]Timarron's first amended petition alleged the following causes of action against Morton: (1) trademark infringement under Texas Business and Commerce Code section 16.26; (2) injury to business reputation by dilution under Texas Business and Commerce Code section 16.29; (3) trade dress infringement under 15 U.S.C. § 1125(a); (4) trade dress dilution under 15 U.S.C. § 1125(c); (5) common law trademark infringement; (6) unjust enrichment; (7) tortious interference with prospective business relations; and (8) unfair competition. Timarron did not plead an action for declaratory judgment.

3

### A. Applicable Law and Standard of Review

Texas Rule of Civil Procedure 162 permits a plaintiff to voluntarily dismiss his claims or nonsuit a party opponent at any time before he has introduced all his evidence other than rebuttal evidence. Tex. R. Civ. P. 162; *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997) (orig. proceeding), *cert. denied*, 525 U.S. 823 (1998). A plaintiff's nonsuit is effective immediately upon filing. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862–63 (Tex. 2010).

The granting of a nonsuit is a ministerial act. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 324–25 (Tex. 2009) (orig. proceeding); *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex. 1982). A trial court generally has no discretion to refuse to sign an order for dismissal once notice of nonsuit has been filed. *See Bennett*, 960 S.W.2d at 38; *see also Joachim*, 315 S.W.3d at 862–63. However, rule 162 expressly limits the right to nonsuit an entire cause when the defendant has a claim for affirmative relief pending. *Bennett*, 960 S.W.2d at 38; *see also* Tex. R. Civ. P. 162.

To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action independent of the plaintiff's claim, on which the defendant could recover benefits, compensation, or relief, even though the plaintiff may abandon his cause of action or fail to establish it. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990); *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990). Thus, under rule 162, if a defendant does no more than resist the plaintiff's claim, the right to take a nonsuit

4

is absolute. *Gen. Land Office*, 789 S.W.2d at 570; *see also Digital Imaging Assocs., Inc. v. State*, 176 S.W.3d 851, 854 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (stating that restating a defense in the form of a request for a declaratory judgment does not defeat a plaintiff's claims to nonsuit).

The Uniform Declaratory Judgments Act (UDJA) is not available to settle disputes already pending before a court. *BHP Petroleum Co.*, 800 S.W.2d at 841. The Texas Supreme Court has eschewed the use of a declaratory judgment action to "deprive the real plaintiff of the traditional right to choose the time and place of suit." *Id.* (citing *Abor v. Black*, 695 S.W.2d 564, 566 (Tex. 1985)). The Texas Supreme Court has also concluded that trial courts should decline to exercise jurisdiction seeking a declaration of non-liability in a tort action, holding that "a declaration of non-liability for past conduct is not normally a function of the declaratory judgment statute because it deprives the potential plaintiff of the right to determine whether to file, and if so, when and where." *Id.* Moreover, the Texas Supreme Court has cited with approval an opinion from the Dallas Court of Appeals in which the court held that a declaratory-judgment counterclaim was not properly brought because the issue raised by the defendant—that no agency relationship existed—was already before the court as part of the plaintiff's case. *Id.* (citing *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied)). The Texas Supreme Court noted that the Dallas court distinguished counterclaims seeking a true declaration controlling an ongoing and continuing relationship from

5

counterclaims involving a one-time occurrence that is fully covered by the 2007 WL 4099413plaintiff's original suit and involves no new controversies. *Id.* (citing *John Chezik Buick Co.*, 749 S.W.2d at 595).

In certain instances, a defensive declaratory judgment may present issues beyond those raised by the plaintiff. For instance, a defensive request for declaratory judgment may be permissible and may survive a plaintiff's nonsuit when there is an ongoing and continuing relationship between the parties such that the request has greater ramifications in determining the parties' respective rights and obligations in the relationship than just in the plaintiff's original suit. *See id.* at 841–42; *Winslow v. Acker*, 781 S.W.2d 322, 328 (Tex. App.—San Antonio 1989, writ denied); *John Chezik Buick Co.*, 749 S.W.2d at 595.

We review whether Morton's declaratory judgment claim and her claim for attorney's fees under chapter 37 constitute an independent claim for affirmative relief or present issues beyond those raised by Timarron under a de novo standard of review. *See Monterey Networks, Inc. v. Alcatel USA, Inc.*, No. 05-01-00071-CV, 2002 WL 461550, at *2 (Tex. App.—Dallas Mar. 27, 2002, no pet.) (not designated for publication) (relying on *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994), and *Schuld v. Dembriknski*, 12 S.W.3d 485, 488 (Tex. App.—Dallas 2000, no pet.), and stating that because the granting of a nonsuit is a ministerial act and because we interpret the pleadings to determine whether appellant stated a claim for affirmative relief, we review the case under a de novo standard of review); *Hansson v. Time Warner Enter. Advance*, No. 03-01-00578-

6

CV, 2002 WL 437297, at *2 (Tex. App.—Austin Mar. 21, 2002) (not designated for publication) (relying on *Butler Weldments Corp. v. Liberty Mut. Ins. Co.*, 3 S.W.3d 654, 658 (Tex. App.—Austin 1999, no pet.), and stating that appellate court uses de novo standard of review when reviewing whether appellant's counterclaim established an independent claim for affirmative relief).

### B. Analysis

In analyzing whether Morton's declaratory judgment counterclaim constituted an independent claim for affirmative relief that survived Timarron's nonsuit, we note that Timarron pleaded a cause of action against Morton for trademark infringement. Morton's declaratory judgment counterclaim sought a declaration that "Defendant [Morton] is not infringing Plaintiff's [Timarron's] registered mark." Morton's counterclaim is thus a "defensive mirror" of Timarron's trademark infringement claim: Timarron asked the trial court to find that Morton had infringed Timarron's trademarks; Morton asked the trial court to find that she had *not* infringed Timarron's trademarks. *See Digital Imaging Assocs.*, 176 S.W.3d at 855; *Newman Oil Co. v. Alkek*, 614 S.W.2d 653, 655 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). Morton's declaratory judgment counterclaim therefore does not constitute a claim for affirmative relief because it is not a cause of action independent of Timarron's cause of action for trademark infringement and on which Morton could recover benefits, compensation, or relief. *See, e.g.*, *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 525 (Tex. App.—Dallas 2010, no pet.) (explaining that defendant's

7

defensive declaratory judgment counterclaim was not a cause of action for affirmative relief independent of plaintiff's claims because it asked for no greater relief than defendant asked for without the declaratory judgment counterclaim).

Here, Morton's declaratory judgment counterclaim seeking a declaration that Morton did not infringe on Timarron's registered mark seeks no greater relief than Morton would be entitled to in the absence of the declaratory judgment counterclaim. *See Digital Imaging Assocs.*, 176 S.W.3d at 855 (holding that claim for declaratory judgment that merely mirrors controlling issues in plaintiff's case is not a claim for affirmative relief); *see also In re Hanby*, No. 14-09-00896-CV, 2010 WL 1492863, at *3 (Tex. App.—Houston [14th Dist.] Apr. 15, 2010, orig. proceeding) (sub. mem. op.) (holding that counterclaim did not seek a declaration concerning an ongoing obligation and was therefore not a claim for affirmative relief).

Morton nonetheless argues that her declaratory judgment counterclaim is an independent claim for affirmative relief that survives Timarron's nonsuit because of the parties' trademark registrations and oppositions filed in the USPTO. Morton argues that the ongoing trademark registrations and oppositions filed in the USPTO, which were abated during the pendency of the state court case, constitute an ongoing and continuing relationship such that her declaratory judgment counterclaim has ramifications in determining the parties' respective rights and obligations beyond Timarron's state court trademark infringement suit—that being ramifications in the parties' trademark registrations and

8

oppositions pending in the USPTO.[5]  But, according to the order issued by the Trademark Trial and Appeal Board suspending the federal proceedings pending the outcome of Timarron's state court suit, the results of the state court trademark infringement suit "could have a bearing" on the federal proceedings and "may provide some persuasive insight," but the Board "may not necessarily be bound by" any state court decision.[6]  Based on this language, a declaration of non-infringement from the state court on Morton's declaratory judgment counterclaim might be considered as persuasive authority by the Board but

---

[5]Morton concedes in her brief that she made the opposite argument in the trial court, arguing that the outcome of the state court case did *not* have any bearing on the proceedings in the USPTO.

[6]The order states,

> Following a careful review of the civil action complaint, the Board finds that a decision by the state court *could have a bearing* on th[e] issues in this opposition proceeding.  The Board notes that th[e] opposer and applicant are both parties to the state court action and that the state court action and the Board proceeding involve a substantial amount of identical questions of law and fact.  Specifically, opposer has asserted a claim of trademark infringement in the state court action and seeks to enjoin applicant from using its involved mark herein.  Here, opposer has asserted a claim of priority and likelihood of confusion as its ground for opposition.  While the Board *may not necessarily be bound* by the state court's decision regarding the issue of likelihood of confusion and/or trademark infringement, the state court's determination regarding these issues *may provide some persuasive insight* with regard to opposer's claim of priority and likelihood of confusion asserted in this proceeding. [Citation omitted.] Moreover, to the extent the state court grants opposer's request for injunctive relief and enjoins applicant from using its involved mark, such a holding *may affect* the registrability of applicant's subject mark. [Emphasis added.]

9

would not be binding on the Board. Morton has not cited, and we have not located, authority for the proposition that the effect of a court's non-liability decision on other proceedings pending between the parties in a different forum creates the type of "ongoing and continuing" relationship between the parties or constitutes the type of ramifications that would enable a defensive declaratory judgment action to survive a nonsuit. *Compare Sanchez,* 308 S.W.3d at 525 (holding that defendant's declaratory judgment counterclaim sought declaration on affirmative defenses to claims on which the parties had already joined issue and presented no greater ramifications than original suit), *Mustang Secs. & Investigations, Inc. v. Alpha & Omega Servs., Inc.*, No. 01-06-00093-CV, 2007 WL 4099413, at *4 (Tex. App.—Houston [1st Dist.] Nov. 15, 2007, no pet.) (mem. op.) (holding that defendant's declaratory judgment counterclaim was not the proper subject of a declaratory judgment action because there was no contract between defendant and plaintiff and there was no evidence that the parties were engaged in an ongoing and continuing relationship), *and Monterey Networks, Inc.*, 2002 WL 461550, at *2–3 (declining to hold that parties had a continuing relationship simply because they were alleged to be competitors), *with BHP Petroleum Co.*, 800 S.W.2d at 842 (holding defendant's declaratory judgment counterclaim for interpretation of gas purchase contract was claim for affirmative relief because it would define parties' obligations under contract in the future), *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 728 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that defendant's

10

declaratory judgment counterclaim seeking declaration of state and federal eligibility of the term "Habitat" for trademark protection constituted independent claim for affirmative relief beyond plaintiff's trademark infringement claim), *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 880–81 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that defendant's declaratory judgment counterclaim seeking declaration of no common-law or ceremonial marriage was claim for affirmative relief beyond plaintiff's suit for divorce because it would define parties' obligations in the future), *and Winslow*, 781 S.W.2d at 328 (holding that defendant's declaratory judgment counterclaim was claim for affirmative relief because it would settle future disputes concerning royalties owed under partition deed).

Because Morton's declaratory judgment counterclaim seeking a declaration of non-infringement is a defensive mirror that does not seek affirmative relief beyond the relief Morton would be entitled to upon disposition of Timarron's trademark infringement claim, because the existence of the federal registration and opposition filings in the USPTO does not alone create an ongoing and continuing relationship between the parties, and because Morton's request for a declaration of non-infringement would not necessarily have any ramifications beyond Timarron's state court suit, Morton's declaratory judgment counterclaim seeking a declaration of non-infringement does not constitute a claim for affirmative relief.

Because Morton's counterclaim does not constitute a claim for affirmative relief, the trial court did not abuse its discretion by dismissing Morton's counterclaim in the order granting Timarron's nonsuit. We overrule Morton's first issue.

## IV. TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING MORTON'S CLAIM FOR ATTORNEY'S FEES

In her second issue, Morton argues that the trial court erred by granting Timarron's nonsuit because Morton had asserted a claim for attorney's fees.

Section 37.009 of the UDJA provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). A party bringing a counterclaim under the UDJA may recover its attorney's fees "if its counterclaim is more than a mere denial of the plaintiff's cause of action." *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 769 (Tex. App.—Fort Worth 2006, pet. denied).

Morton relies on several cases from this court to support her argument that her claim for attorney's fees survived Timarron's nonsuit. This court has held that a defendant's request for attorney's fees under chapter 37 will survive a nonsuit when the *plaintiff* filed suit for a declaratory judgment under chapter 37. *See Town of Flower Mound v. Upper Trinity Reg'l Water Dist.*, 178 S.W.3d 841, 842–44 (Tex. App.—Fort Worth 2005, no pet.); *Falls Cnty. v. Perkins & Cullum*, 798 S.W.2d 868, 871–72 (Tex. App.—Fort Worth 1990, no writ) (distinguishing

12

cases in which a plaintiff filed a declaratory judgment action and the defendant sought attorney's fees from cases in which the plaintiff did not file a declaratory judgment action but the defendant filed a defensive declaratory judgment action and sought attorney fees under chapter 37). Here Timarron did not file a declaratory judgment action pursuant to chapter 37, and thus the preceding cases are not applicable.

Morton also points to this court's decision in *Noe v. McLendon*, in which attorney's fees were upheld under section 37.009. No. 02-06-00062-CV, 2007 WL 2067844, at *3 (Tex. App.—Fort Worth July 19, 2007, no pet.) (mem. op.). But in *Noe*, the trial court's judgment awarded McLendon attorney's fees based on sections 38.001 and 37.009 of the civil practice and remedies code after a trial; Noe did not challenge the propriety of the attorney's fees award pursuant to these statutory provisions. *Id.* ("Noe does not argue that the [attorney's fee] award is improper under these statutes"). Although Noe had previously nonsuited her claims against McLendon, she repleaded them, and the case proceeded to a bench trial. *Id.* at *1. Thus, *Noe* did not involve the situation presented here.

As set forth above, Morton's declaratory judgment counterclaim for a declaration of non-infringement is not an independent claim for affirmative relief and did not survive Timarron's nonsuit. Because Morton's declaratory judgment counterclaim did not survive Timarron's nonsuit, Morton is not entitled to attorney's fees based on chapter 37. *See Warrantech Corp.*, 210 S.W.3d at 770

13

(holding defendant's declaratory judgment counterclaim for declaration of no duty to defend pleaded in response to plaintiff's claim for breach of the duty to defend would not support an award of attorney's fees to defendant); *Hansson*, 2002 WL 437297, at *3 (same); *see also Nat'l Enter., Inc. v. E.N.E. Props.*, 167 S.W.3d 39, 43–44 (Tex. App.—Waco 2005, no pet.) (same); *Heritage Life Ins. Co. v. Heritage Grp. Holding Corp.*, 751 S.W.2d 229, 235–36 (Tex. App.—Dallas 1988, writ denied) (same); *John Chezik Buick Co.*, 749 S.W.2d at 594–95 (same). Accordingly, we hold that the trial court did not err by dismissing Morton's counterclaim for attorney's fees in the order granting Timarron's nonsuit. We overrule Morton's second issue.

## V. CONCLUSION

Having overruled Morton's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: June 12, 2014

14