**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2012

No. 11-20355

Lyle W. Cayce
Clerk

COLONY NATIONAL INSURANCE COMPANY,

Plaintiff–Appellee

v.

UNIQUE INDUSTRIAL PRODUCT COMPANY,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. 4:10-CV-1234

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This declaratory judgment suit was filed by Plaintiff-Appellee Colony National Insurance Company ("Colony") seeking a declaration that it had no duty to either defend or indemnify its insured, Defendant-Appellant Unique Industrial Product Company, L.P. ("Unique"), for claims in two underlying lawsuits against Unique.  After considering extrinsic evidence in the form of an affidavit and the insurance application discussed therein, the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20355

granted summary judgment for Colony based on the insurance policy's known-loss exclusion. For the following reasons, we REVERSE and REMAND.

## FACTUAL BACKGROUND

Colony insured Unique under two consecutive commercial general liability ("CGL") policies running from October 16, 2005 through October 16, 2007.[1] Under the terms of the CGL policies, Colony will pay those sums that Unique becomes legally obligated to pay as damages because of "bodily injury" or "property damage" only if, *inter alia*, the "bodily injury" or "property damage" occurs during the policy period and was not, prior to the policy period, known to have occurred by the insured.

Since 2002, Unique supplied brass fittings and swivel nuts as plumbing products to Uponor, Inc. ("Uponor"), a company engaged in the business of supplying or distributing plumbing products to other entities for installation in residential plumbing systems. Purchasers of the brass fittings and swivel nuts Unique supplied to Uponor began complaining of damages to their residences because of failures of Unique's plumbing products. As a result, Unique was named in two lawsuits, specifically, *Uponor, Inc. v. Unique Industrial Product Co.*, Case No. 4:07-cv-02986 (S.D. Tex. September 16, 2007) (the "Texas Lawsuit") and *McGregor v. Uponor, Inc.*, Case No. 0:09-cv-01136-ADM-JJK (D. Minn. May 15, 2009) (the "Minnesota Lawsuit"), a class action in which Uponor made claims against Unique by way of a third-party complaint.

Uponor's allegations against Unique in the Texas and Minnesota Lawsuits are substantially similar. Specifically, Uponor alleges that it purchased swivel nuts and brass fittings from Unique at various times since 2002. However, during or before June 2004, Uponor placed Unique on notice regarding reports

---

[1] After the renewal at the end of the first year of coverage, Colony exercised its right to prematurely terminate its insurance contract with Unique because of numerous adverse developments since the renewal. The termination was made effective on February 10, 2007.

No. 11-20355

of failures of Unique's swivel nuts and that the failures were causing damages to residences and to Uponor's business. As a result, after June 2004, Unique began supplying different swivel nuts to Uponor, but Uponor alleges that as with the previous swivel nuts, Unique did not monitor, supervise, test, or examine the post-June 2004 swivel nuts for deficiencies.

In addition, Uponor alleges that it began receiving notices of failures of certain brass fittings supplied by Unique, which had been incorporated into plumbing systems in various residential properties and had caused water damage. As a result, in August 2006, Uponor had the defective fittings and swivel nuts removed from the inventory of its purchasers and returned to Uponor. Then, on August 24, 2006, representatives from Uponor and Unique met to discuss the fitting and swivel nut failures. During the meeting, Uponor alleges that Unique agreed to take responsibility for existing and future claims from the defective products if Uponor purchased Unique's remaining inventory. Uponor alleges that after the meeting, however, Unique failed to take any responsibility for the damages or to reimburse Uponor for claims that Uponor had already paid. Furthermore, Uponor alleges that not only were Unique's swivel nuts and fittings defective but that Unique also "knew of problems" with their fittings and yet failed to notify Uponor or make necessary modifications to the fittings supplied to Uponor.

Sometime after the initiation of the Texas and Minnesota Lawsuits, Unique tendered the cases to Colony for defense and indemnification but Colony declined to provide coverage or a defense with respect to both actions. Instead, Colony filed this declaratory judgment action in federal court. After considering an affidavit from an underwriter for Colony and the insurance application discussed therein, the district court granted summary judgment in favor of Colony on the grounds that Unique had known of the losses alleged in the Texas

3

No. 11-20355

and Minnesota Lawsuits prior to purchasing the CGL policy from Colony. This appeal ensued.

DISCUSSION

We have jurisdiction over this appeal from a final order of the district court under 28 U.S.C. § 1291. We review a district court's award of summary judgment *de novo*, applying the same standard as the district court. *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690-91 (5th Cir. 2010); *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 224 (5th Cir. 2009) ("We review legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court to determine whether summary judgment was appropriate."); *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009). Summary judgment is appropriate if the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Likewise, the insurer's duty to defend is a question of law that we review *de novo*. *Ooida*, 579 F.3d at 471-72. "Because we sit in diversity, we must apply Texas law, mindful that in making an *Erie* guess, '[w]e are emphatically not permitted to do merely what we think best; we must do that which we think the [Texas] Supreme Court would deem best.'" *Nautilus Ins. Co. v. Zamora*, 114 F.3d 536, 538 (5th Cir. 1997) (quoting *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc)). Under Texas law, we are required to apply the "eight-corners rule," also known as the "complaint-allegation rule" in determining whether the duty to defend exists. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). "Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder*

*Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citing *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)). Furthermore, a liberal interpretation of the allegations in favor of the insured is to be indulged so that the court must resolve all doubts regarding the duty to defend in favor of the duty. *Nokia*, 268 S.W.3d at 491 (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).

To obligate the insurer to defend, the insured must first successfully meet his burden of showing that the facts as alleged in the plaintiff's pleadings state a claim against him potentially within the coverage of the insurance policy. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996). Specifically, an insurer's duty to defend arises only if the facts alleged in the plaintiff's pleadings, if taken as true, allege a case within the policy's coverage;[2] thus, a petition that does not allege facts within the scope of coverage will not suffice legally to require an insurer to defend the suit against its insured. *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). However, the duty to defend the lawsuit applies "if there is a possibility that *any* of the claims" alleged in the lawsuit might be covered. *Nokia*, 268 S.W.3d at 491, 495-96 ("The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered.").

---

[2] "The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action." *Canutillo*, 99 F.3d at 701 (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983)). Accordingly, although we note that on October 31, 2011, Uponor filed a Second Amended Complaint in the Texas Lawsuit against Unique, we need not consider the allegations contained therein in conducting our duty to defend analysis because Colony refused to defend Unique based on Uponor's First Amended Complaint.

No. 11-20355

In other words, as long as there is "potentially" a cause of action in the case within the policy's coverage, the insurer is obligated to defend the entire case:

> 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor.'

*Heyden Newport*, 387 S.W.2d at 26 (citation omitted); *see also Gore Design Completions Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) ("When in doubt, defend.").

If the insured carries his burden, the insurer, also within the confines of the eight-corners rule, must establish that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage of all claims in order to defeat the duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citations omitted). In determining whether an exclusion applies, Texas courts "examine the factual allegations showing the origin of the damages rather than the legal theories asserted by the plaintiff." *Canutillo*, 99 F.3d at 703-04 (citations omitted). Furthermore, in the event of ambiguity, any exceptions and limitations contained in a policy are strictly construed against the insurer. *Northfield*, 363 F.3d at 529 (citing *Canutillo*, 99 F.3d at 701).

In addition, under the eight-corners rule, it is inappropriate when conducting the duty to defend analysis to consider "facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (citing *Potomac Ins. Co. of Ill. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000)). Indeed, extrinsic evidence such as "facts outside the pleadings, even those easily ascertained, are not ordinarily material to the

6

determination" of the duty to defend, and the court will not read facts into the pleadings, "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at141-42.

Some Texas intermediate appellate courts and our court, making an *Erie* guess, have carved out a narrow exception permitting the use of extrinsic evidence in determining the duty to defend when the extrinsic evidence is "relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *GuideOne,* 197 S.W.3d at 308-09. Specifically, some Texas intermediate appellate courts and our court have found that extrinsic evidence may be used "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying cases." *Northfield*, 363 F.3d at 531; *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex. App.—Corpus Christi 1992, writ denied) ("When the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy, the evidence adduced at the trial in a declaratory judgment action may be considered along with the allegations in the underlying petition." (citing *Gonzales v. Am. States Ins. Co. of Tex.*, 628 S.W.2d 184, 186 (Tex. App.—Corpus Christi 1982, no writ))). However, although the Texas Supreme Court has never recognized this, nor, indeed, any exception to the eight-corners rule, it has acknowledged that "any such exception would not extend to evidence that was relevant to both insurance coverage and the factual merits of the case as alleged by the third-party plaintiff." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) (citing *GuideOne*, 197 S.W.3d at 308-09).

Here, the district court erred in finding no duty to defend by looking to extrinsic evidence to support its determination. According to the allegations,

No. 11-20355

Uponor purchased fittings and swivel nuts from Unique at various times since 2002. In addition, Uponor alleges that "[s]ubsequent to UPONOR purchasing Swivel Nuts from UNIQUE, Palm Harbor and individuals informed UPONOR of multiple Swivel Nut failures, demanded reimbursement from UPONOR for the damages they claim to have sustained as a result of the defective Swivel Nuts and also demanded replacement of all UNIQUE Swivel Nuts contained in the approximately 5,000 Palm Harbor homes in which UNIQUE's Swivel Nuts had been installed."  Furthermore, "[o]n or about November 29, 2006[,] UPONOR, both orally and in writing, put UNIQUE on notice of claims that had been made by Ryan Homes regarding the replacement of . . . Fittings supplied by UNIQUE and the demand by Palm Harbor Homes for replacement of Swivel Nuts supplied by UNIQUE."

We must liberally construe the allegations and resolve all ambiguities in favor of the insured and the duty to defend. *See Nokia*, 268 S.W.3d at 491. "If the third-party plaintiff's complaint alleges any amount of property damage that occurred during the policy period and that was caused by the insured, the duty to defend arises." *Wilshire Ins.*, 581 F.3d at 225 (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31-32 (Tex. 2008)).  Here, Uponor's pleadings against Unique allege that claims arose subsequent to Uponor's purchasing Unique's swivel nuts and fittings. Although Uponor alleges Unique knew of the defective swivel nuts in 2004, it also alleges that Unique agreed to use different swivel nuts. However, it does not then allege that Unique knew those different swivel nuts were defective before the policy date of October 16, 2005. Without more, the allegations do not clearly and unambiguously fall outside the scope of coverage of the CGL policies and a potentially covered claim clearly exists. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). Thus, unless an exclusion is applicable, the factual allegations lodged in the Texas and Minnesota Lawsuits trigger Colony's duty to defend.

No. 11-20355

Here, the district court found that the known-loss exclusion contained in the CGL policies was applicable to deny coverage. After considering extrinsic evidence in the form of an affidavit and Unique's insurance application discussed therein, the district court found that Unique knew of the losses before buying insurance from Colony because Unique had reported in its insurance application that it had "sold a batch of T-fittings from one manufacturer which was defective." In Texas, under the fortuity doctrine, an insured cannot seek insurance coverage for a loss that has already begun and which is or should be known to have begun. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, pet. denied). However, application of the fortuity doctrine in the duty-to-defend context is resolved by the eight-corners rule. *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied).

Furthermore, the district court's consideration of extrinsic evidence would be impermissible even under the narrow exception recognized by the Texas intermediate appellate courts and our court since the extrinsic evidence overlaps with the merits of or engages the truth or falsity of the facts alleged in the Texas and Minnesota Lawsuits. *See Northfield*, 363 F.3d at 531; *Pine Oak*, 279 S.W.3d at 654; *Wade*, 827 S.W.2d at 452. Unique's knowledge of problems with its products and the timing of that knowledge is relevant to its liability to Uponor and, therefore, is not wholly outside the issues in the underlying liability case. Considering the affidavit and insurance application obligates accepting that Unique's products were defective and that Unique had knowledge of same, a conclusion that would be highly prejudicial to Unique's position in the Texas and Minnesota Lawsuits. Accordingly, it was inappropriate for the district court to consider the affidavit and the insurance application in order to determine whether the known-loss exclusion was applicable.

No. 11-20355

Since the district court found that the known-loss exclusion was applicable, it did not address Colony's other argument that Unique's voluntary agreement with Uponor in August 2006 to take responsibility for existing and any future claims breached the consent-to-settle clause in the CGL policies, vitiating coverage.  The CGL policies' consent-to-settle clause provides, that an insured will not "except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Colony's] consent."

First, it is not at all clear that Unique's August 2006 agreement constitutes the type of settlement referenced in this clause.  Further, although Colony argues that any breach of the clause renders all insurance void, it cites no case for this proposition.  Colony cites our decision in *Motiva Enterprises, LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381 (5th Cir. 2006) for the proposition that any settlement without insurance company involvement voids coverage as a matter of law.  *Id.* at 385-87.  We conclude that Colony reads *Motiva* too broadly.  In *Motiva*, we stated: "An insurer's right to participate in the settlement process is an essential prerequisite *to its obligation to pay a settlement*."  *Id.* at 386 (emphasis added).  Here, we cannot discern that the entirety of Uponor's complaints seeks to recover "payment of a settlement."

Furthermore, Colony also fails to address the effect on the *Motiva* analysis of the subsequent decisions of the Texas Supreme Court in *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 633-37 (Tex. 2008) and *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.,* 288 S.W.3d 374, 377-83 (Tex. 2009), discussing prejudice in the notice-of-suit context.  Indeed, *Motiva* cited to the court of appeals' decision in *PAJ*, which held that the analogous notice-of-suit provision was a condition precedent rather than a covenant.  445 F.3d at 386 n.5.  However, the Texas Supreme Court reversed the court of appeals in *PAJ,* and declined to find that clause to be a "condition precedent."  243 S.W.3d at 635-36.

10

No. 11-20355

Thus, from the record before us, under the current state of the law, we cannot conclude that the "breach of consent to settle" argument provides a separate basis upon which to affirm. Accordingly, we leave further consideration of this issue to the district court to address in the first instance on remand.

Finally, the district court's determination that Colony did not owe indemnity was based solely upon its duty to defend determination, so we reverse that determination as well. We note, however, that two years ago, the Texas Supreme Court disavowed cases suggesting that negation of the duty to defend always means there will be no duty to indemnify in *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 745 (Tex. 2009). "These duties are independent, and the existence of one does not necessarily depend on the existence or proof of the other. . . . Where disputed facts are proven in the liability case, whether none, some, or most of the material coverage facts will have been established in that underlying suit depends on the circumstances of the case and other legal and equitable principles." *Id.*

## CONCLUSION

Based on the foregoing, we REVERSE the district court's holding that Colony had no duty to defend or indemnify Unique and REMAND for a determination by the district court in the first instance of the merits, if any, of Colony's remaining arguments.

No. 11-20355

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

The majority goes too far in remanding to the district court. The district court clearly erred in finding no duty to defend by looking to extrinsic evidence to support its determinations. I join the majority insofar as it reverses the ruling of the district court based on the introduction of extrinsic evidence. However, because Unique breached the consent-to-settle provision of the insurance contract, summary judgment was proper.

The insurance contract between Unique and Colony included a consent-to-settle provision which limited Colony's liability if Unique entered a settlement without Colony's consent. Such a provision protects insurers when insureds exclude the insurer from the settlement negotiations but still expect the insurer to foot the bill. Colony urges us to affirm the district court's grant of summary judgment because Unique settled specific claims with Uponor without Colony's consultation or involvement. The majority is skeptical of Colony's claim, but is remanding to the district court to evaluate the consent-to-settle provision.

I do not find it necessary to remand to the district court. We may affirm the district court's grant of summary judgment on any grounds supported by the record. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). I would affirm because Unique breached the consent-to-settle provision of the insurance contract.

Unbeknownst to Colony, Unique engaged in settlement negotiations and reached a settlement agreement with Uponor for at least some of the underlying claims. The emails indicate that Unique was taking "responsib[ility] for any claims arising out of defective product," and "agreed to issue a check for 50% of the total claim of $17,478.22 in full settlement of these claims" for swivel nut liability. By voluntarily assuming obligations and incurring expenses without

No. 11-20355

Colony's consent, Unique breached the consent-to-settle provision of the insurance contract.

In *Motiva Enterprises, L.L.C. v. St. Paul Fire & Marine Insurance Co.*, this court held that an insurer could properly deny coverage under Texas law when the insured entered a settlement agreement without consulting the insurer, tendering the settlement to the insurer, or permitting the insurer to participate in the settlement decision. 445 F.3d 381, 386 (5th Cir. 2006). The logic of *Motiva* applies to Unique's settlement. Unique neither informed Colony of the settlement negotiations, nor did Unique invite Colony to participate in the settlement. Unique, in an effort to protect its business relationship with Uponor, agreed to accept liability for future claims and settled the past claims for a specific sum. Colony's exclusion triggered the consent-to-settle provision. Colony was prejudiced by the settlement both because it would likely be forced to pay the settlement amount and it would be bound by any admissions made by Unique. Under *Motiva*, this prejudicial breach justifies denying coverage.

There was sufficient evidence before this court to hold that the settlement between Unique and Uponor breached the consent-to-settle provision of the insurance contract, prejudicing Colony. The consent-to-settle provision exists to prevent just this sort of behavior by insureds. When Unique violated the provision, coverage was voided. Because summary judgment could be affirmed on the basis of voided coverage, I respectfully dissent.