# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2018

Lyle W. Cayce
Clerk

No. 17-10362

WESCO INSURANCE COMPANY, A DELAWARE CORPORATION,

      Plaintiff - Appellee

v.

GWENDOLYN GENE LAYTON; TROYLYNN ANN LAYTON,

      Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-572

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

     Gwendolyn Gene and Troylynn Ann Layton sued Ledford E. White, their longtime attorney and friend, alleging that he defrauded them in connection with two transactions. After a jury returned a verdict against White, his professional-liability insurer, Wesco Insurance Company, sought a declaratory judgment of no coverage under White's policy. The district court granted summary judgment in favor of Wesco, and we AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10362

## I.

## A.

On August 16, 2013, Gwendolyn Gene and Troylynn Ann Layton (together, the "Laytons") filed a lawsuit in Texas state court against Ledford E. White, among others. The Laytons alleged common-law and statutory fraud, negligent misrepresentation, breach of contract, and breach of fiduciary duty, among other claims.

Specifically, the Laytons alleged that White—their longtime attorney, advisor, and friend—had defrauded and stolen from them in connection with two transactions. First, the Laytons loaned White, at his request, nearly $400,000 to develop a property in Crowley, Texas. According to the Laytons' original petition, White never repaid those loans and lied about the existence of mineral rights on the property, even though he collected tens (if not hundreds) of thousands of dollars through the lease and sale of mineral interests.[1] Second, White persuaded the Laytons to lend money to another of White's clients to invest in his used car business. White represented that he would act as an intermediary to facilitate loans totaling $400,000 and would personally hold car titles to ensure the Laytons were repaid. Payments stopped after the Laytons had received roughly $50,000 in principal and interest. White assured the Laytons he would pursue the borrower, and even told them (falsely) that their loan was secured by the borrower's house. He then told the Laytons he had foreclosed on the borrower's house but could not repay them because the house had diminished in value. According to the Laytons' original petition, these were all lies. The borrower had long since repaid the loan, and White had, in fact, pocketed the money for himself.

---

[1] The Laytons' original petition also alleged that White's former law partner owned half of the Crowley property by virtue of a constructive trust imposed after a jury found White liable for fraud and breach of fiduciary duties.

2

No. 17-10362

The Laytons' original petition repeatedly emphasized that White was an attorney. It described White as "a board certified real estate attorney who has served as the Laytons' attorney, trusted advisor and confidant." The very first paragraph of the petition's "Factual Background" section reiterated that allegation. In stating their common-law fraud cause of action, the Laytons alleged that White owed them fiduciary duties because of both their friendship and attorney-client relationship. Moreover, in alleging breach of fiduciary duty, the Laytons explained first that White owed them a fiduciary duty because of their attorney–client relationship, only then adding that they also had a long-standing friendship. With respect to the used-car transaction, the Laytons alleged that White owed them fiduciary duties because he served as an intermediary, receiving money for their benefit.

On May 30, 2014, the Laytons filed an amended petition. Their amended petition asserted a negligence cause of action against White for failure to act reasonably in his role as attorney, advisor, and confidant to the Laytons. They alleged, among other things, that White was negligent for failing to reveal the extent of his conflicts of interest to them and failing to obtain the Laytons' written consent before entering into a transaction with them. The amended petition also added White's firm, Ledford E. White, P.C. ("White, P.C."), as a defendant. The amended petition concerned the same allegedly fraudulent transactions as the original petition. However, with respect to the used car transaction, the amended petition specifically alleged White provided "shoddy" legal advice and that White promised the Laytons he would hold their money in his firm's escrow account.

3

No. 17-10362

A jury found White and White, P.C., liable for common-law fraud, breach of fiduciary duty, theft, negligence, and civil conspiracy.[2] The trial court entered final judgment on August 28, 2015. The court awarded actual damages in the total amount of $680,000. Although the jury found the Laytons were contributorily negligent, the trial court did not reduce the judgment.

**B.**

After the Laytons filed their lawsuit, White (on behalf of himself and White, P.C.) purchased a claims-made-and-reported Lawyers Professional Liability Policy (the "Policy") from Wesco Insurance Company. The Policy provided coverage from March 14, 2014, to March 14, 2015.[3] As relevant here, Wesco agreed to indemnify and defend White and White, P.C., against claims "first made against the Insured and reported to the Company during the policy period." The Policy included the following "condition precedent" to coverage:

1. The Insured, as a condition precedent to the obligations of the Company under this policy, shall give written notice to the Company during the policy period:

    a. of any claim made against the Insured during the policy period;

    b. of the Insured's receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to make a claim against the Insured;

    c. Any act or omission that may reasonably be expected to be the basis of a claim against the Insured.

The Policy defined "claim" as follows:

"Claim" means a written or verbal demand received by the Insured for money or services arising out of an act or omission . . . in

---

[2] The jury found that White alone committed statutory fraud and negligent misrepresentation.

[3] Although White had maintained professional liability insurance for himself and his firm since March 1997, Wesco did not issue those policies.

4

rendering of failing to render legal services. A demand shall include the service of suit . . . .

Under the Policy, "legal services" included, among other things, services performed "in a fiduciary capacity."

White first submitted the Laytons' original petition (filed August 16, 2013) to Wesco on May 8, 2014. Wesco's Federal Rule of Civil Procedure 30(b)(6) representative testified that Wesco denied coverage because the claim was first made prior to the beginning of the policy period. Wesco alternatively based its denial of coverage on the position that White and White, P.C.'s acts did not involve "legal services." The Laytons' counsel subsequently submitted their amended petition to Wesco to place it on notice. Wesco once more denied coverage and subsequently filed this lawsuit, seeking a declaratory judgment of no coverage under the Policy. The district court granted summary judgment in favor of Wesco on March 10, 2017. It concluded that the Laytons first made a "claim" within the meaning of the Policy when they filed their original petition in state court. Thus, it held the claim was not "first made" during the policy period and was excluded from coverage. The court found that, even if the claim had been made within the policy period, the fortuity doctrine would preclude coverage because White knew or should have known his conduct would likely expose him to liability when he bought the Policy.

The Laytons timely appealed.

## II.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). A court must enter summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if a reasonable jury could find in the non-movant's favor. *Vela*, 276 F.3d

No. 17-10362

at 666. In determining whether such a dispute exists, we view the evidence in the light most favorable to the non-movant. *Id.* The interpretation of an insurance contract is a question of law, which we review de novo. *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 641 (5th Cir. 2004).

**III.**

Federal jurisdiction in this case is based on diversity of citizenship. Thus, Texas law governs. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Under Texas law, an insurance policy is a contract, *see Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.), and the ordinary rules of contract interpretation apply, *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 100 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The primary goal of the court is to give effect to the intention of the parties as expressed in the policy. *See id.* If a court determines the policy is ambiguous, then it must resolve those ambiguities in favor of the insured. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). "A policy is unambiguous, as a matter of law, if the court can give it a definite legal meaning." *Id.*

The Policy in this case involves two different duties: the duty to defend and the duty to indemnify. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). These duties are distinct and should generally be decided separately. *See id.* (citing *D.R. Horton*, 300 S.W.3d at 743). Under Texas law, a court determines an insurer's duty to defend according to the "eight-corners rule" by looking only to the insurance policy and the third-party complaint. *Id.* In determining the duty to indemnify, however, the court is not bound by the eight-corners rule but may instead look to the evidence introduced by the parties during the coverage litigation. *See D.R. Horton*, 300 S.W.3d at 741. Although "one duty may exist without the other," *id.* at 743,

the same reasons that negate one duty may also negate the other, *see Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

The fortuity doctrine is premised on the principle that an insured "cannot insure against something that has already begun and which is known to have begun." *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citations omitted). The fortuity doctrine precludes coverage for known losses or losses in progress. *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied); *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ). "A 'known loss' is one that the insured knew had occurred before the insured entered into the contract for insurance," *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied), whereas a "loss in progress" is an "ongoing progressive loss" that the "insured is, or should be, aware of . . . at the time the policy is purchased," *Scottsdale Ins. Co.*, 68 S.W.3d at 75. A final judgment against the insured is not required for the fortuity doctrine to apply. *See Warrantech*, 210 S.W.3d at 766. The key inquiry is "not whether the insureds actually knew of the underlying loss or potential liability, but rather whether they knew, at the inception of coverage that they were 'engaging in activities' which might reasonably be expected to expose them to or result in liability." *RLI Ins. Co. v. Maxxon Southwest Inc.*, 108 F. App'x 194, 199 (quoting *Franklin v. Fugro-McClelland (Sw.) Inc.*, 16 F. Supp.2d 732, 737 (S.D. Tex. 1997)).

Whether the fortuity doctrine precludes coverage under the Policy depends on whether the Laytons' first petition alleged sufficient facts to put White on notice a loss had occurred before the Policy's coverage period had begun. Under Texas law, application of the fortuity doctrine in the duty-to-defend context is resolved by the eight-corners rule. *Colony Nat. Ins. Co. v. Unique Indus. Product Co.*, 487 F. App'x 888, 893 (5th Cir. 2012). The Laytons'

original petition was sufficient to put White on notice of an "ongoing loss" at the time the Policy was purchased. The original petition contained a breach of fiduciary duty claim—a claim falling directly within the Policy's definition of legal services. Moreover, the original petition was replete with references to White's status as an attorney. It identified White as an attorney in its preliminary statement and then again just one paragraph later in the very first paragraph of the Factual Background section. Two of the causes of action alleged White owed the Laytons a fiduciary duty as their attorney. The Laytons even concede in their brief on appeal that White acted *as their attorney* in connection with both fraudulent transactions. The allegations in the Laytons' original petition were thus more than sufficient to put White on notice of an ongoing, potential loss. *See Warrantech Corp.*, 210 S.W.3d at 766–68.

Such knowledge may also be imputed to White, P.C. Under Texas law, the knowledge of a corporation's representative is imputed to the corporation. *See Hirsch v. Tex. Lawyers' Ins. Exch.*, 808 S.W.2d 561, 563 (Tex. App.—El Paso 1991, writ denied). White testified he was the president and sole principal of White, P.C. since its founding. By the time the Laytons filed their petition, White had parted ways with his law partner. Further, he was the only attorney from White, P.C. with any relationship to the fraudulent transactions. Because the original and amended petitions are based on the same facts and concern the same two fraudulent transactions, that the Laytons first named White P.C. in the amended petition is irrelevant. And while the Laytons added allegations that funds from both transactions were placed into the firm's escrow account, those facts were already known to White and, thus, to White, P.C. *See id.* As a result, the fortuity doctrine precludes coverage for White, P.C., as well. *See Travis*, 68 S.W.3d at 76–77; *Two Pesos*, 901 S.W.2d at 502; *Maxxon Sw.*, 108 F. App'x at 198.

No. 17-10362

The Laytons contend a fact issue exists because White testified at his deposition he did not believe a covered claim had occurred. But White's self-serving deposition testimony is insufficient to create a genuine issue of material fact here. *See, e.g., Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (finding the plaintiff's "self-serving statements that he did not commit sexual harassment" were "insufficient to create a triable issue of fact as to whether Cal-Western fired him because of his age" because the truth or falsity of another employee's complaint is not material to "whether the employer reasonably believed the employee's allegation and acted on it in good faith." (internal citation omitted)). It is immaterial whether White believed a covered claim existed. *See Scottsdale Ins. Co.*, 68 S.W.3d at 77 ("The key question [the fortuity doctrine asks] is whether the wrongdoing occurred before or after the purchase of the insurance."). And to the extent White believed the loss was not covered, that belief was unreasonable because the original petition alleged a breach of fiduciary duty, which fell within the Policy's definition of covered legal services. Even accepting as true White did not know of a loss or loss in progress, he certainly knew of the underlying acts and so should have known of a loss that was ongoing at the time the Policy was issued. *See Warrantech Corp.*, 210 S.W. 3d at 766 (citations omitted). The fortuity doctrine precludes coverage under these circumstances.

The only case the Laytons cite in support of their argument that White had to be aware of coverage is not to the contrary. *See Roman Catholic Diocese of Dall. ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133 S.W.3d 887 (Tex. App.—Dallas 2004, pet. denied). In that case, the court denied summary judgment because there was a dispute of fact over whether the insured was aware its employee had previously molested children. *See id.* at 895–96. By contrast, White was aware of both the wrongful conduct *and* the allegations contained in the original petition. The Laytons merely contend he was not (as

9

he claimed at his deposition) aware the lawsuit involved covered legal services. Appellants cite to no case holding such awareness is required to trigger application of the fortuity doctrine.

In sum, we conclude the fortuity doctrine bars coverage for defense and indemnity. Because that holding is sufficient to grant summary judgment, we need not reach the alternate ground the district court relied upon in granting summary judgment. *See, e.g.*, *Shamloo v. Miss. State Bd. of Trs. of Insts. of Higher Learning*, 620 F.2d 516, 524 (5th Cir. 1980) ("[C]ases are to be decided on the narrowest legal grounds available.").

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.