

NUMBER 13-12-00630-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN CADE,                                                                                  Appellant,

v.

JACK L. STONE, INDIVIDUALLY
AND D/B/A JUST COMPUTERS AND
GMI, INC., A TEXAS CORPORATION,                                      Appellees.

### On appeal from the 319th District Court of
### Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Garza**

This is an appeal from a summary judgment rendered in an "action of debt"

brought to revive a dormant judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.006

(West 2008). Appellant John Cade, the judgment creditor and plaintiff below, contends that the trial court erred in rendering judgment in favor of appellees Jack L. Stone, individually and d/b/a Just Computers, and GMI, Inc. (collectively "Stone"). We reverse and render.

## I. BACKGROUND

Cade sued Stone in California in 1993 and obtained a default judgment awarding damages of nearly $39,000. The judgment was domesticated in Nueces County district court on October 8, 1993. A writ of execution on the domesticated judgment was issued on July 13, 1995, but was returned nulla bona. *See* BLACK'S LAW DICTIONARY 1172 (9th ed. 2009) (defining "nulla bona" as "[a] form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction").

On October 23, 1998, Stone filed for Chapter 11 bankruptcy protection. *See* 11 U.S.C. §§ 1101–1174. Cade intervened in the bankruptcy proceedings to challenge the dischargeability of the debt Stone incurred by virtue of the 1993 judgment. The bankruptcy court found insufficient evidence of fraud and therefore denied Cade's challenge by written judgment rendered on March 18, 2002. *See id.* § 523(a)(2)(A) (noting that a discharge of indebtedness in bankruptcy proceedings "does not discharge an individual debtor from any debt for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition"). However, the bankruptcy proceedings were eventually dismissed, pursuant to a motion filed by the United States Trustee, on August 18, 2003. *See id.* § 1112.[1]

---

[1] The bankruptcy court's dismissal order, which was included as an exhibit to Cade's summary judgment motion, states that the motion to dismiss was brought by the United States Trustee under

2

Cade then brought the underlying suit on January 6, 2012, as an "action of debt" in order to revive the now-dormant 1993 judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.006. Stone answered, and both parties—agreeing that there were no genuine issues of material fact to be decided at trial—moved for traditional summary judgment. *See* TEX. R. CIV. P. 166a(a)–(c). After a hearing, the trial court granted Stone's motion, denied Cade's motion, and dismissed all of Cade's claims. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Mena v. Lenz*, 349 S.W.3d 650, 652 (Tex. App.—Corpus Christi 2011, no pet.). In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. We will affirm a traditional summary judgment only if the movant has conclusively proved its defense as a matter of law or if the movant has negated at

___

section 1112 of the bankruptcy code, but it does not state exactly why the case was dismissed, and the parties do not so advise us. *See* 11 U.S.C. § 1112(b)(1), (b)(4) (permitting "any party in interest" to move for dismissal of a Chapter 11 bankruptcy proceeding "for cause" and defining "cause" broadly). The parties also do not advise this Court as to whether Stone received a discharge of debt from the bankruptcy court, notwithstanding the fact that the proceedings were eventually dismissed. *See id.* § 1141(d) (stating generally that, in a Chapter 11 proceeding, the confirmation of a reorganization plan triggers discharge of debt). However, we note that Stone does not allege that his debt to Cade was discharged in bankruptcy, and he did not plead discharge as grounds for summary judgment. *See* TEX. R. CIV. P. 94 (noting that discharge in bankruptcy is an affirmative defense that must be pleaded).

least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When both parties move for summary judgment and the trial court grants one motion and denies the other, as here, we review both parties' summary judgment evidence and determine all questions presented. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 765 (Tex. App.—Fort Worth 2006, no pet.). Our task is to render the judgment that the trial court should have rendered. *See FM Props.*, 22 S.W.3d at 872; *Warrantech*, 210 S.W.3d at 765. We will affirm a summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004).

## B.     Applicable Law

If a writ of execution is not issued within ten years after the rendition of a judgment, "the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001 (West Supp. 2011). However, if a writ of execution is issued within the ten-year post-judgment period, another writ can issue at any time until ten years elapse from the issuance of the previous writ. *Id.*; *see Hicks v. First Nat'l Bank*, 778 S.W.2d 98, 103–04 (Tex. App.—Amarillo 1989, writ denied). Accordingly, a judgment creditor may prolong the life of the judgment indefinitely by attempting execution at least once every ten years.

Once a judgment becomes dormant, it may be "revived by scire facias or by an

4

action of debt brought not later than the second anniversary of the date that the judgment becomes dormant." TEX. CIV. PRAC. & REM. CODE ANN. § 31.006.

**C. Analysis**

In his summary judgment motion, Cade argued that the 1993 judgment became dormant on May 8, 2010 and that his petition, filed on January 6, 2012, was therefore timely. *See id.* (noting that an action to revive a dormant judgment must be "brought not later than the second anniversary of the date that the judgment becomes dormant"). The writ of execution on the 1993 judgment was issued on July 13, 1995—which would ordinarily mean that the time for execution would be extended to July 13, 2005, *see id.* § 34.001—but Cade contended that the automatic bankruptcy stay "tolled the dormancy period" until May 8, 2010. In particular, Cade notes that the bankruptcy proceedings were pending for a total of 1,760 days, from October 23, 1998, when the bankruptcy petition was filed, to August 18, 2003, when the proceedings were dismissed. According to Cade, the statutory ten-year execution period, which would have expired on July 13, 2005, was therefore extended by 1,760 days, to May 8, 2010.

In his response to Cade's motion and in his own motion for summary judgment, Stone argued that: (1) Cade's action is barred by res judicata; (2) Cade's action is an impermissible collateral attack on the bankruptcy court's order affirming the dischargeability of Cade's original judgment; (3) Cade's action is barred by limitations; and (4) in the alternative, Stone never received notice of Cade's California suit. Stone's motion included an affidavit in which he averred that he was "never served with personal citation" in the California suit and was "living in Texas and was in the hospital in Corpus Christi" when the California judgment was rendered. Cade argued in

5

response to Stone's motion that res judicata was inapplicable because (1) the bankruptcy court "did not adjudicate the merits of the underlying debt or the validity of the domesticated judgment," and (2) the dismissal of the bankruptcy proceedings "mooted the judgment of dischargeability in the adversary proceeding." The trial court denied Cade's motion for summary judgment and granted Stone's.

### 1. Res Judicata and Collateral Attack

We first address Stone's res judicata defense. The party relying on the affirmative defense of res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); TEX. R. CIV. P. 94 (identifying res judicata as an affirmative defense)). "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Id.* (citing *Gracia v. RC Cola-7-UP Bottling Co.,* 667 S.W.2d 517, 519 (Tex. 1984)).

It is undisputed that the bankruptcy court was a court of competent jurisdiction, that its March 18, 2002 judgment was a final determination,[2] and that the parties to that proceeding are identical to the parties here. For res judicata purposes, therefore, the only questions are (1) whether the bankruptcy court's judgment was a ruling "on the

---

[2] Cade argues that "the dismissal of [Stone]'s bankruptcy had the effect of mooting the [March 18, 2002] judgment that the debt was dischargeable." We need not address this argument because of our conclusion that, in any event, the March 18, 2002 judgment was not a ruling "on the merits" of Cade's original claims and res judicata therefore does not bar Cade's present suit.

6

merits" of Cade's original claims, and (2) whether the claims brought by Cade in the instant action "were or could have been raised" in the bankruptcy adversary proceeding. *See Travelers Ins. Co.*, 315 S.W.3d at 862.

We find that the bankruptcy court's March 18, 2002 judgment was not a ruling "on the merits" of Cade's original claims against Stone. Cade initiated the adversary proceedings in Stone's bankruptcy case because he believed that the domesticated 1993 judgment was not dischargeable pursuant to section 523(a)(2)(A) of the bankruptcy code, which provides generally that a bankruptcy discharge "does not discharge an individual debtor from any debt for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The question before the bankruptcy court was, therefore, limited to whether Cade's 1993 judgment was based on Stone's fraud. The bankruptcy court found insufficient evidence of fraud and therefore determined that the domesticated 1993 judgment was, in fact, dischargeable. The bankruptcy court's March 18, 2002 judgment was not, however, a ruling on the merits of Cade's underlying action against Stone. Instead, it was merely a ruling that the domesticated 1993 judgment was not a "debt for money . . . obtained by . . . false pretenses, a false representation, or actual fraud" and was therefore dischargeable. *See id.*; *Travelers Ins. Co.*, 315 S.W.3d at 862.

We further find that Cade's instant claims were not brought and could not have been brought in bankruptcy court. The instant suit seeks to revive a dormant judgment. In determining whether to revive a dormant judgment, a trial court considers the date of the judgment, evidence of any writs of execution issued on the judgment, and the date of the motion to revive the judgment. *Furry v. SMS Fin. XV, L.L.C.*, No. 14-12-00754-

7

CV, 2013 Tex. App. LEXIS 2245, at *4 (Tex. App.—Houston [14th Dist.] Mar. 7, 2013, no pet. h.) (mem. op.); *Cadles of Grassy Meadow, II, LLC v. Herbert*, No. 07-09-00190-CV, 2010 Tex. App. LEXIS 3147, at *7 (Tex. App.—Amarillo Apr. 27, 2010, no pet.) (mem. op.); *Cadle Co. v. Rollins*, No. 01-09-00165-CV, 2010 Tex. App. LEXIS 1421, at *4–5 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.) ("A scire facias proceeding is a non-evidentiary hearing for which there is no need for findings of fact and conclusions of law."); *Thomas v. Poonen*, No. 05-00-01233-CV, 2001 Tex. App. LEXIS 4558, at *7 (Tex. App.—Dallas July 6, 2001, no pet.) (mem. op., not designated for publication); *see also Trad v. Colonial Coins, Inc.*, No. 14-02-00172-CV, 2003 Tex. App. LEXIS 300, at *5 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (stating that the judgment "should be revived" because appellant timely filed motion for scire facias and indicating that revival of judgment is not discretionary if statutory requirements to revive dormant judgment are satisfied).  Whether the statutory requirements for revival have been met does not implicate the merits of Cade's underlying claims against Stone, whether based on fraud or any other theory of recovery.  Accordingly, the claims brought by Cade in the instant suit are not the same as those raised in the bankruptcy adversary proceeding.  Moreover, the instant claims could not have been brought in bankruptcy court because revival of a dormant judgment is not one of the enumerated grounds upon which bankruptcy adversary proceedings may be based.  *See* FED. R. BANKR. P. 7001.

Because the bankruptcy court's March 18, 2002 judgment was not a ruling "on the merits" of Cade's original claims, and because the claims brought by Cade in the instant action were not and could not have been raised in the bankruptcy adversary

8

proceeding, res judicata does not bar Cade's suit. *See Travelers Ins. Co.*, 315 S.W.3d at 862.[3]

Similarly, Cade's instant action is not an impermissible collateral attack on the bankruptcy court's judgment. "A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). The bankruptcy court's March 18, 2002 judgment, which held that the domesticated 1993 judgment was dischargeable, did not impede the ability of Cade to revive that judgment in the event that the bankruptcy proceedings were dismissed. Therefore, Cade's attempt to revive the judgment was not precluded by the bankruptcy court's ruling.

### 2. Limitations

We next consider whether Cade's suit is barred by limitations. Stone contends that the pendency of the bankruptcy proceedings did not toll the time limits for moving to revive the domesticated 1993 judgment. In support of that position, Stone points to section 108(c) of the bankruptcy code, which states:

> [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of

---

[3] Stone made the following argument in his motion and on appeal:

> Allowing [Cade] to pursue this course of action could result in a never-ending cycle of litigation, where [Stone] would once again have to file for bankruptcy, [Cade]'s claim would be dismissed by the Bankruptcy Court, the bankruptcy would then be dismissed because there would be no other pending claims, and [Cade] would file his lawsuit in the District Court of Nueces County to start the process all over again.

We believe Stone's fears are unfounded. As noted *supra* note 1, although the bankruptcy court ruled that Stone's debt to Cade was dischargeable, it does not appear that the bankruptcy discharge actually took effect before the proceedings were dismissed. If, in fact, the discharge did take effect, then Stone could simply plead that the debt was discharged in the event that Cade "start[ed] the process all over again."

9

the filing of the petition, then such period does not expire until the later of—

(1)     the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2)     30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.

11 U.S.C. § 108(c).

Stone directs us to *Gantt v. Gantt*, in which the Fourteenth Court of Appeals considered whether the pendency of bankruptcy proceedings tolled the time limit for perfecting an appeal of a divorce decree.  208 S.W.3d 27, 29–31 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  The court found that section 108(c) extended the deadline for only thirty days after the bankruptcy stay was lifted.  *Id.* at 31.  The court reasoned as follows:

> By its express terms, section 108(c) tolls no time limits, but provides only for some deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay.  Beyond this, a time period may be further suspended only if mandated by other federal or state law incorporated through section 108(c).  Section 108(c) thereby anticipates and provides for the expiration of periods for commencing or continuing civil actions during bankruptcy stays; and an interpretation of that section as tolling such periods would render its 30 day extension of time largely meaningless.  Because [appellee] has cited, and we have found, no authority that section 108(c) tolls our post-judgment or appellate timetables, and because other Texas appeals courts have held that section 108(c) does not do so (but provides only a residuary 30-day extension of time), we have no basis to conclude otherwise.

*Id.* at 30–31 (citations and footnotes omitted).  Stone also points to *Rogers v. Corrosion Products, Inc.*, in which the federal Fifth Circuit Court of Appeals determined that section 108(c) "does not create a separate tolling provision."  42 F.3d 292, 297 (5th Cir. 1995).  Instead, the court held that, "for the time period to be suspended, other federal or state law must mandate it and then be incorporated through [section] 108(c).

Otherwise, a party must file suit within the thirty-day grace period after the end of the stay." *Id.* Finally, Stone cites a 2009 memorandum opinion in which the Beaumont Court of Appeals held that section 108(c) did not serve to toll or suspend the ten-year dormancy time period. *See Cedyco Corp. v. Whitehead*, No. 09-08-00300-CV, 2009 Tex. App. LEXIS 5435 (Tex. App.—Beaumont July 16, 2009, no pet.) (mem. op.). Stone urges us to follow *Cedyco* and apply the reasoning of *Gantt* and *Rogers* to the issue of whether Stone's bankruptcy tolled the time limit for Cade to revive the domesticated 1993 judgment.

In response, Cade contends that *Gantt* and *Rogers* are distinguishable from the case at bar and that *Cedyco* was wrongly decided and is not binding. We find Cade's arguments persuasive. First, *Gantt* is distinguishable because that case involved the tolling of the time period to file a notice of appeal, not the tolling of a statute of limitations as in this case. *See* 208 S.W.3d at 29–31. The *Gantt* court specifically noted that the appellee had cited cases "involv[ing] the tolling of statutes of limitations rather than a tolling of post-judgment or appellate deadlines," *id.* at 31 n.7, and it confined its holding to the issue of whether appellate deadlines were tolled by the automatic bankruptcy stay. *Id.* at 31. Second, *Rogers* is distinguishable because it applied Louisiana law. *See* 42 F.3d at 293–95. The *Rogers* court, applying bankruptcy code section 108(c), first discussed whether the automatic bankruptcy stay tolled the applicable state statute of limitations *under Louisiana law*. *Id.* Upon finding that Louisiana law did not provide for suspension of limitations during bankruptcy, the court then took the "next step" of examining the bankruptcy code "to determine whether it provides a separate basis for suspension." *Id.* at 295. The court concluded that

11

bankruptcy code section 108 does not create a separate tolling provision, but it only reached that question because it already determined that no state law mandated the suspension of the limitations period. *See id.*

Unlike the court in *Rogers*, we must first apply *Texas* law to the question of whether the automatic bankruptcy stay tolls the applicable statute of limitations. We find that it does. It is well-settled in this state that where "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (citing *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex. Civ. App.—Austin 1922, writ dism'd); *Pease v. State*, 228 S.W. 269, 270–71 (Tex. Civ. App.—El Paso 1921, writ ref'd); *Fields v. Austin*, 30 S.W. 386, 387 (Tex. Civ. App. 1895, writ ref'd)). Under this doctrine, the automatic bankruptcy stay tolls limitations. *See Peterson v. Tex. Commerce Bank-Austin, N.A.*, 844 S.W.2d 291, 294 (Tex. App.—Austin 1992, no writ) ("[W]hen a claimant is prohibited from bringing suit by the Bankruptcy Code's automatic-stay provision, the statute of limitations is tolled until the stay is lifted."); *see also* 11 U.S.C. § 362 (providing generally that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case

12

under this title . . .").  Accordingly, the time during which the automatic bankruptcy stay was in effect is not "counted against [Cade] in determining" when the applicable statute of limitations (i.e., section 34.001 of the civil practice and remedies code) operated to bar execution on the 1993 domesticated judgment, and, in turn, when the time period for reviving that judgment expired.  *See Hughes*, 821 S.W.2d at 157.

In *Cedyco*, the Beaumont Court of Appeals stated that section 108(c) "does not create a tolling provision."  *Cedyco Corp.*, 2009 Tex. App. LEXIS 5435, at *9.  However, *Cedyco* cited only *Gantt* for that proposition, and the *Gantt* court was careful to note that a limitations period may be suspended, despite the lack of an independent tolling provision in section 108(c), "if mandated by other federal or state law incorporated through section 108(c)."  *Gantt*, 208 S.W.3d at 31.  The *Cedyco* court did not examine whether "other federal or state law"—or, in the parlance of the statute, "applicable nonbankruptcy law," *see* 11 U.S.C. § 108(c)—tolled the applicable limitations period.  *See* 2009 Tex. App. LEXIS 5435, at *9.  Moreover, the Beaumont court's memorandum opinion is not binding on this Court.  *See, e.g., Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (noting that, while Texas appellate courts may draw upon precedents of any other federal or state court, we are obligated to follow only higher Texas courts and the United States Supreme Court), *abrogated on other grounds as stated in Rowe v. Hornblower Fleet*, No. C-11-4979 JCS, 2012 U.S. Dist. LEXIS 164402, at *33 (N.D. Cal. Nov. 16, 2012) (order).  For these reasons, we decline to follow *Cedyco*.

We note that section 108(c) of the bankruptcy code appears to specifically contemplate the possibility that limitations may be tolled under state law during the

pendency of bankruptcy proceedings. In particular, the statute provides that, where "applicable nonbankruptcy law" provides a limitations period which has not expired at the time the bankruptcy case commences, the limitations period will not expire until the later of (1) "the end of such period, *including any suspension of such period occurring on or after the commencement of the case,*" and (2) thirty days after the bankruptcy stay is terminated. 11 U.S.C. § 108(c) (emphasis added). Here, "applicable nonbankruptcy law" provides that Cade had ten years following the first writ of execution, issued on July 13, 1995, within which he could apply for another writ of execution, and an additional two years within which he could revive the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 31.006, 34.001. "[A]pplicable nonbankruptcy law" further provides that those time periods were suspended during the time that Cade was prohibited from executing on the judgment due to the automatic bankruptcy stay. *See Hughes*, 821 S.W.2d at 157; *Peterson*, 844 S.W.2d at 294; *see also Trustmark Nat'l Bank v. Pike County Nat'l Bank*, 716 So. 2d 618, 622 (Miss. 1998) (distinguishing *Rogers* and holding that the plaintiff's suit was not barred under section 108(c) because Mississippi state law specifically mandates the tolling of the limitations period during the automatic bankruptcy stay).

We conclude that, under section 108(c) of the bankruptcy code, the limitations period for executing on the domesticated 1993 judgment did not expire until May 8, 2010.[4] *See* 11 U.S.C. § 108(c). Cade therefore had until May 8, 2012 to revive the dormant judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 31.006, 34.001. His suit,

---

[4] This date represents the later of: (1) the end of the limitations period "including any suspension of such period occurring on or after the commencement of the case," *id.*; and (2) thirty days following termination of the stay (i.e., September 12, 2003). *See id.*

14

filed on January 6, 2012, is not barred by limitations.

### 3. Lack of Notice

We finally address Stone's contention that summary judgment in favor of Cade was improper—and should have been instead awarded to him—because Stone had established that he was never served with process regarding the original 1993 California lawsuit.[5]  As noted, Stone attached an affidavit to his response to Cade's summary judgment motion in which he averred that he was never personally served with citation notifying him of the California suit.  He also argued as follows in his own summary judgment motion:

> Notwithstanding everything else, [Stone] has attached an affidavit showing that he never received notice of the cause of action in California, and that even though [Cade] knew his whereabouts, no effort was made to serve process on [Stone] and let him know that there was a cause of action against him in California.  Lack of notice is a permissible collateral attack on such judgments.

The California judgment, a copy of which was attached to Cade's summary judgment motion, was a default judgment and recited that Stone was "regularly served with process" but "failed to appear and answer" Cade's suit.  There is no dispute that the judgment was properly domesticated in Texas.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 35.001–.008 (West Supp. 2011) (Uniform Enforcement of Foreign Judgments Act ["UEFJA"]).  Stone did not perfect an appeal either from the California judgment or the domesticated Texas judgment.  The domesticated judgment was "subject to the same defenses and proceedings for reopening, vacating, or staying a judgment as a judgment of the Texas court."  *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132

---

[5] Although Stone's summary judgment motion raises this ground, he does not address it on appeal.  Nevertheless, we must affirm a summary judgment if any of the theories presented to the trial court are meritorious.  *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004).  Therefore, we will evaluate whether this ground was meritorious.

15

S.W.3d 477, 483 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(c)).[6]

Stone is correct that the issue of lack of notice, being a challenge to personal jurisdiction of the trial court that rendered the original judgment, may be raised via collateral attack. *See In the Interest of E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) ("A complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time."); *see also Travelers Ins. Co.*, 315 S.W.3d at 863 (citing *Browning*, 165 S.W.3d at 346) ("A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act."); *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (noting that a void judgment may be attacked directly or collaterally, whereas a voidable judgment may only be attacked directly). However, Stone has not filed a bill of review seeking to set aside the domesticated 1993 judgment, nor has he cited any authority establishing that a collateral attack on a void judgment may be made in a proceeding, such as this one, brought solely to revive a

_____

[6] In *Mindis Metals v. Oilfield Motor & Control, Inc.*, the Fourteenth Court of Appeals set forth the law applicable to domestication and enforcement of a foreign judgment:

> The United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. Under this principle, Texas is required to enforce a valid judgment from another state. The party seeking to enforce a foreign judgment has the initial burden to present a judgment that appears on its face to be a final, valid, and subsisting judgment. When a judgment creditor files an authenticated copy of a foreign judgment pursuant to the UEFJA, a prima facie case for its enforcement is presented. The burden then shifts to the judgment debtor to prove that the foreign judgment should not be given full faith and credit. The presumption of validity can only be overcome by clear and convincing evidence to the contrary. The laws of the state rendering the judgment determine its validity.

132 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (internal citations omitted).

dormant judgment. Moreover, Stone's answer to Cade's suit did not state that the California court lacked personal jurisdiction over him; instead, it merely relied on his res judicata and limitations defenses. Therefore, summary judgment could not have been properly granted to Stone on the grounds that he was not properly served with process in the original California lawsuit, and summary judgment could not have been denied to Cade on that basis. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933 (Tex. 1992) ("An affirmative defense is waived if it is not pleaded.").[7]

### III. Conclusion

Because Cade established his entitlement to judgment as a matter of law and Stone did not, the trial court should have rendered summary judgment in Cade's favor. We therefore reverse the judgment of the trial court and render judgment, as requested by Cade, that the domesticated 1993 judgment is revived. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.006.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
13th day of June, 2013.

---

[7] Even if Stone did plead lack of notice in his answer, his affidavit stating that he was not served would not have been sufficient to raise a fact issue as to whether the 1993 judgment was, in fact, void. *See Caldwell v. Barnes*, 154 S.W.3d 93, 98 (Tex. 2004) ("At trial, the testimony of a bill of review plaintiff alone, without corroborating evidence, is insufficient to overcome the presumption that the plaintiff was served."); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) ("The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party."); *see also Mindis Metals, Inc.*, 132 S.W.3d at 484 (noting that, once a judgment creditor domesticates a foreign judgment, it presents a prima facie case for enforcement which the debtor has the burden to overcome by clear and convincing evidence to the contrary).